**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CATHY POVER, individually and on behalf of all others similarly situated, | No. 24-5298 |
| | D.C. No. 2:23-cv-09657-GW-PVC |
| *Plaintiff - Appellee*, | |
| v. | |
| | OPINION |
| THE CAPITAL GROUP COMPANIES, INC.; THE BOARD OF DIRECTORS OF THE CAPITAL GROUP COMPANIES, INC., and its members; and THE U.S. RETIREMENT BENEFITS COMMITTEE OF THE CAPITAL GROUP COMPANIES INC., and its members, Does 1–30, | |
| *Defendants - Appellants*. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted August 11, 2025
Pasadena, California

Filed July 30, 2026

Before: Jacqueline H. Nguyen, Danielle J. Forrest, and Lawrence VanDyke, Circuit Judges.

Opinion by Judge Forrest;
Dissent by Judge VanDyke

## SUMMARY[*]

### ERISA/Arbitration

The panel affirmed the district court's denial of defendants' motion to compel arbitration in a case in which Cathy Pover sued her former employer, The Capital Group Companies, Inc., and its fiduciaries on behalf of her employer's retirement-savings plan, The Capital Retirement Savings Plan (the Plan), alleging that the fiduciaries mismanaged the Plan's investments.

The Plan is covered by the Employee Retirement Income Security Act of 1974 (ERISA), which permits plan participants to seek relief on a plan's behalf for breach of the duties owed by the plan's fiduciaries. The Plan contract included an arbitration requirement and a waiver by plan participants of any claims brought on "a class, collective, or representative basis."

The panel considered the interaction between ERISA, which entitles plan participants to sue for mismanagement of their retirement plan, and the Federal Arbitration Act (FAA),

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

which requires courts to enforce valid agreements to arbitrate. At the intersection of these statutes is the judicially created effective-vindication doctrine that renders unenforceable arbitration agreements that prevent the vindication of statutorily protected rights and remedies.

Because the Plan's waiver provision forbids Pover from asserting her rights under ERISA to sue as a representative of the Plan for Plan-wide relief, the panel agreed with the district court that the waiver is unenforceable under the effective-vindication doctrine. Pover alleges fiduciary breaches that fall squarely within the category of duties that ERISA § 409 imposes on plan fiduciaries, and under ERISA § 502(a)(2), Pover is entitled to bring an action on behalf of the Plan to recover any resulting losses as well as such other equitable or remedial relief as the court may deem appropriate. The Plan's representative-action waiver prevents Pover from enforcing her substantive rights under ERISA because her breach-of-fiduciary-duty claims can only be brought in a representative capacity. Accordingly, the waiver is unenforceable under the effective-vindication doctrine.

Addressing the severability of the waiver and arbitration provisions, the panel concluded that Pover's breach-of-fiduciary duty claims must be adjudicated in court rather than arbitration because the Plan's waiver provision expressly provides that if it "is found to be unenforceable by a court of competent jurisdiction, then any claim on a class, collective, or representative basis shall be filed and adjudicated in a court of competent jurisdiction, and not in arbitration."

Dissenting, Judge VanDyke wrote that the majority errs twice over in finding the arbitration clause unenforceable.

On the merits, he would hold that the bar on "representative" suits in the arbitration clause's class-action waiver does not refer to third-party suits on behalf of the Plan. When read in context, that phrase refers to class action or collective "representative" suits only, not principal-agent representative suits like section 502(a)(2) ERISA claims.

But the panel should not have even reached the issue of arbitrability because the parties expressly agreed to allow an arbitrator to decide threshold questions of arbitrability, expressing their desire to keep courts out of this dispute. Although Capital failed to make that argument before the district court, its failure to do so falls squarely within the exceptions to waiver. Judge VanDyke would have waived waiver and sent the question of arbitrability to the arbitrator.

## COUNSEL

Charles H. Field Jr. (argued), Hilary R. Rosenthal, and Myounghee Choung, Sanford Heisler Sharp McKnight LLP, La Jolla, California; David B. McNamee, Kristi Stahnke McGregor, and Kevin H. Sharp, Sanford Heisler Sharp McKnight LLP, Nashville, Tennessee; Sharon Kim, Sanford Heisler Sharp McKnight LLP, New York, New York; Hampton M. Watson, Sanford Heisler Sharp McKnight LLP, Washington, D.C.; for Plaintiff-Appellee.

Parker A. Rider-Longmaid (argued) and Shay Dvoretzky, Skadden Arps Slate Meagher & Flom LLP, Washington, D.C.; Michael S. Hines, Mary E. Grinman, and James R. Carroll, Skadden Arps Slate Meagher & Flom LLP, Boston, Massachusetts; Jeremy Patashnik, Skadden Arps Slate

Meagher & Flom LLP, New York, New York; Jason D. Russell, Skadden Arps Slate Meagher & Flom LLP, Los Angeles, California; for Defendants-Appellants.

Leah M. Nicholls, Public Justice PC, Washington, D.C., for Amicus Curiae Public Justice.

## OPINION

FORREST, Circuit Judge:

Cathy Pover sued her former employer, The Capital Group Companies, Inc., and its fiduciaries on behalf of her employer's retirement-savings plan for the fiduciaries' mismanagement of the plan's investments. The plan is covered by the Employee Retirement Income Security Act of 1974 (ERISA), which permits plan participants to seek relief on a plan's behalf for breach of the duties owed by the plan's fiduciaries. However, the plan contract included an arbitration requirement and a waiver by plan participants of any claims brought on "a class, collective, or representative basis." Because this waiver provision forbids Pover from asserting her rights under ERISA to sue as a representative of the plan for plan-wide relief, we agree with the district court that the waiver is unenforceable under the effective-vindication doctrine, and we affirm the district court's denial of defendants' motion to compel arbitration.

# BACKGROUND

## A.  The Plan

Capital Group is a global asset manager that sponsors a retirement plan for its current and former employees known as The Capital Retirement Savings Plan (Plan). The Plan allows each participant to maintain an individual account funded by contributions from each participant and Capital Group, as well as the participant's investment earnings. The participants may direct how their individual accounts are invested by selecting from a menu of investment options provided by the Plan. Capital Group collects a transaction fee from the investment funds included in the Plan's menu.

The Plan is a "defined contribution plan." The Supreme Court has explained that "a 'defined contribution plan' or 'individual account plan' promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 n.1 (2008). A "defined benefit plan," in contrast, "promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation." *Id.* While defined-benefit plans were once "the norm," defined-contribution plans have become the leading form of private retirement-plan offerings. *See id.* at 255 (citation omitted).

The Plan is governed by ERISA and the terms of its Plan Document. According to the Plan Document, the Administrative Committee serves as the Plan's fiduciary and may amend or modify the Plan. As relevant here, the Committee amended the Plan before this litigation by adding two provisions related to dispute resolution: (1) an

arbitration requirement and (2) a waiver of class, collective, and representative actions. The arbitration requirement dictates that "[a]ny claim, controversy or alleged breach or violation of law that arises out of or relates in any way to the Plan or a claimant's participation in the Plan and seeks a remedy, ruling or judgment of any kind against the Plan" must be resolved in arbitration. And the waiver provision states:

> A Participant, former Participant, or Beneficiary must bring any dispute in arbitration on an individual basis only, and not on a class, collective or representative basis and must waive the right to commence, be a party to, or be an actual or putative class member of any class, collective, or representative action arising out of or relating to the Plan, including, but not limited to, any claims related to the Plan.

The waiver also specifies that if it "is found to be unenforceable by a court of competent jurisdiction, then any claim on a class, collective, or representative basis shall be filed and adjudicated in a court of competent jurisdiction, and not in arbitration."

## B.  The Lawsuit

Pover sued Capital Group, the Committee, Capital Group's Board of Directors, and other fiduciaries responsible for controlling and managing the Plan's investments (hereinafter, collectively, Capital Group). She alleged that Capital Group breached its fiduciary duties to the Plan by retaining certain investment options for participants despite their poor performance. Pover further

alleged that Capital Group knew certain investment funds were underperforming but retained them in its offerings to collect the substantial transaction fees generated by the funds. She asserted that Capital Group's failure to remove these funds from the Plan's investment menu violated its duties of prudence and loyalty to the Plan, and that Capital Group failed to monitor its delegees, further harming the Plan.

Pover sued Capital Group "in a representative capacity on behalf of the Plan . . . , seeking appropriate relief . . . to protect the interests of the entire Plan." She sought several forms of plan-wide monetary and equitable relief provided under ERISA. Among these, declarations that the Capital Group fiduciaries breached their duties owed to the Plan and "are personally liable to make good to the Plan"; "restitution and disgorgement"; and an order (1) requiring the Capital Group's fiduciaries to pay "the losses resulting from each breach of fiduciary duty and to restore to the Plan" any lost profits, (2) removing Plan fiduciaries found to have breached their duties and enjoining them from future violations, (3) "reform[ing] the Plan to include only prudent investments," and (4) granting all "other equitable or remedial relief the Court deems appropriate."

Capital Group moved to compel arbitration under the Federal Arbitration Act (FAA), asserting that Pover is bound by the Plan's arbitration requirement. Pover opposed Capital Group's motion, arguing that the Plan's representative-action waiver was unenforceable under the effective-vindication doctrine, and arbitration was thus not required, because the waiver foreclosed her ability to represent the Plan and pursue plan-wide relief on its behalf, undermining her rights under ERISA. Pover also argued that neither she nor the Plan had agreed to arbitrate future claims against

Capital Group. Finally, Pover contended that the arbitration provision is unconscionable and non-severable.

The district court denied Capital Group's motion to compel arbitration. It agreed that the Plan's representative-action waiver could not be enforced because it prospectively waived Pover's substantive rights and remedies under ERISA. The district court explained that ERISA creates a statutory cause of action allowing plan participants to sue on behalf of their plan and recover plan-wide monetary and equitable relief. The court reasoned that Pover's action was "necessarily a representative action seeking plan-wide recovery" and that enforcing the representative-action waiver would prevent her from "bring[ing] any of her claims in a representative capacity on behalf of the Plan." Therefore, it held that the waiver was unenforceable. It also held that the waiver was expressly non-severable because it required any collective or representative claim to proceed in court if found unenforceable. Capital Group appealed.

## DISCUSSION

We have jurisdiction to review the district court's denial of a motion to compel arbitration under 9 U.S.C. § 16(a)(1). We review the district court's decision and its interpretation of ERISA de novo. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824 (9th Cir. 2019); *Stand Up for California! v. U.S. Dep't of the Interior*, 959 F.3d 1154, 1158 (9th Cir. 2020). To promote uniformity, we interpret the language of ERISA documents as a matter of federal common law rather than state law. *Mull v. Motion Picture Indus. Health Plan*, 41 F.4th 1120, 1130 n.8 (9th Cir. 2022).

This case requires us to consider the interaction between two federal statutes: ERISA, which entitles plan participants to sue for mismanagement of their retirement plan, and the

FAA, which requires courts to enforce valid agreements to arbitrate. At the intersection of these statutes is the judicially created effective-vindication doctrine that renders unenforceable arbitration agreements that prevent the vindication of statutorily protected rights and remedies. We begin our analysis by explaining these background legal principles. We then apply them to determine whether the Plan's representative-action waiver is enforceable. Because we conclude that the waiver is not enforceable under the effective-vindication doctrine, we need not address Pover's remaining challenges to arbitration.

## A.  Legal Principles

### 1.  ERISA

"ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (internal quotation marks and citation omitted). In this expansive statutory system, two ERISA sections work together to provide participants in ERISA-governed plans with a federal cause of action to enforce the duties owed to the plan by its fiduciaries. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139–40, 142 & n.9 (1985); *Platt v. Sodexo, S.A.*, 148 F.4th 709, 721 (9th Cir. 2025).

First, § 409(a) imposes liability on fiduciaries who breach their duties to the plan and outlines the remedies available. *See* 29 U.S.C. § 1109(a). The statute provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter

> shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

*Id.* "[T]he principal statutory duties imposed on [fiduciaries] relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specific information, and the avoidance of conflicts of interest." *Russell*, 473 U.S. at 142–43.

Second, § 502(a)(2) creates the enforcement mechanism. *See* 29 U.S.C. § 1132(a)(2). It provides that "[a] civil action may be brought . . . by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under" § 409(a). *Id.* "Section 502(a)(2) thus acts as the vehicle for plan participants to obtain the relief made available by § 409(a)." *Platt*, 148 F.4th at 721.

The Supreme Court has examined how these ERISA sections operate for breach-of-fiduciary-duty claims brought by both defined-benefit and defined-contribution plan participants. *Russell*, 473 U.S. at 136; *LaRue*, 552 U.S. at 252–56. And it has made clear that, in both contexts, plaintiffs bringing a claim under § 502(a)(2) proceed on the plan's behalf. *Russell*, 473 U.S. at 142 n.9 ("[A]ctions for breach of fiduciary duty [under § 502(a)(2) are] brought in a representative capacity on behalf of the plan as a whole."); *LaRue*, 552 U.S. at 253 (explaining that § 502(a)(2)

"authorizes the Secretary of Labor as well as plan participants, beneficiaries, and fiduciaries, to bring actions on behalf of a plan").

*Massachusetts Mutual Life Insurance Co. v. Russell* dealt with a defined-benefit plan. There, a participant in an ERISA-backed employee-benefits plan sued a plan fiduciary under § 502(a)(2) and sought "extra-contractual compensatory or punitive damages caused by improper or untimely processing" of her medical-benefit claim. 473 U.S. at 136. The plan participant contended that the fiduciaries' delayed processing of her individual claim caused actionable harm. *See id.* at 136–38. The Supreme Court held that § 502(a)(2) precluded such individualized relief: "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect *the entire plan*, rather than with the rights of an individual beneficiary." *Id.* at 142 (emphasis added). The Court further noted that "the principal statutory duties" that § 409(a) imposes on fiduciaries are those "relate[d] to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Id.* at 142–43. Thus, "the entire text of § 409(a)" persuaded the Court "that Congress did not intend that section to authorize relief except for the plan itself." *Id.* at 144.

Thirty years later, the Supreme Court revisited § 502(a)(2) in the context of a defined-contribution plan. *LaRue*, 552 U.S. at 250–51. In *LaRue v. DeWolff, Boberg & Associates, Inc.*, a retirement-plan participant alleged that a fiduciary had failed to make changes that he directed to his individual investment portfolio, "'deplet[ing]' his interest in

the [p]lan" and "amount[ing] to a breach of fiduciary duty under ERISA." *Id.* at 251. The plan participant sued seeking "make-whole" monetary recovery for the alleged breach. *Id.*

The Supreme Court held that the misconduct the plan participant alleged concerning the fiduciary's failure to maximize the value of his investment account "f[ell] squarely within th[e] category" of fiduciary duties owed to the plan that are addressed in § 409(a), *id.* at 253, because "trustees are chargeable with any profit which would have accrued to the trust estate if there had been no breach of trust," *id.* at 253 n.4 (citation modified). In doing so, the Court distinguished its previous language in *Russell*, which had recognized that ERISA's "draftsmen were primarily concerned . . . with remedies that would protect the entire plan." *Id.* at 254 (quoting *Russell*, 473 U.S. at 142). The Court explained that "*Russell*'s emphasis on protecting the 'entire plan' from fiduciary misconduct reflect[ed] the former landscape of employee benefit plans," which was dominated by defined-benefit plans under which participants' individual entitlement to benefits was not threatened unless fiduciary misconduct "risk[s] . . . default by the entire plan." *Id.* at 254–55.

The Court also clarified that in the defined-contribution-plan context, "fiduciary misconduct need not threaten the solvency of the entire plan to reduce [individual] benefits below the amount that participants would otherwise receive." *Id.* at 255–56. For defined-contribution plans, "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned" ERISA's draftsmen, making a § 502(a)(2) claim appropriate. *Id.* at 256. That is, *LaRue* "recognized that Section 409(a) protects against breaches of fiduciary duty

involving the management of assets within defined contribution plans," regardless of whether the injury is felt at the plan level or at the individual-account level. *Cedeno v. Sasson*, 100 F.4th 386, 399 (2d Cir. 2024). In either scenario, the plaintiff-participant proceeds on behalf of the plan and the remedies afforded by ERISA benefit the plan. *LaRue*, 552 U.S. at 253–56; *see also Russell*, 473 U.S. at 142 n.9; *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1093 (9th Cir. 2018) ("[T]he [*LaRue*] Court made clear that it had not reconsidered its longstanding recognition that it is the plan, and not the individual beneficiaries and participants, that benefit from a winning claim for breach of fiduciary duty, even when the plan is a defined contribution plan.").

## 2.   FAA

Congress enacted the FAA in 1925 as a "response to widespread judicial hostility to arbitration." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). The FAA established "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). It provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Consistent with its underlying purpose, the FAA's "mandate is to enforce arbitration agreements," *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (citation modified), and to protect parties' choices for where and under what procedures to resolve their disputes, *id.* ("[A]n arbitration agreement is 'a specialized kind of forum-

selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.'" (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974))). But there is an exception for arbitration agreements that purport to waive substantive rights and remedies. *See id.* This exception is known as the effective-vindication doctrine. *Italian Colors*, 570 U.S. at 235.

### 3. Effective-Vindication Doctrine

An arbitration agreement "does not alter or abridge substantive rights; it merely changes how those rights will be processed." *Viking River Cruises*, 596 U.S. at 653. Indeed, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). Thus, where "a provision in an arbitration agreement forbid[s] the assertion of certain statutory rights," preventing the vindication of those rights, courts will invalidate the provision "on 'public policy' grounds."[1] *Italian Colors*, 570 U.S. at 235–36.

We recently joined several of our sister circuits in holding that "arbitration provisions preventing individuals from obtaining the plan-wide relief available under § 409(a)

---

[1] The Supreme Court has discussed with approval the effective-vindication doctrine and repeatedly recognized that arbitration provisions may not prevent a party from effectively vindicating statutory rights and securing statutory remedies. *See, e.g.*, *Italian Colors*, 570 U.S. at 235–36; *see also Cedeno*, 100 F.4th at 396 (collecting cases); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1098 (10th Cir. 2023) ("[T]he Supreme Court has repeatedly recognized the existence of the effective vindication exception."). But the Court has yet to invalidate an arbitration provision based on this doctrine.

violate the effective-vindication doctrine." *Platt*, 148 F.4th at 721; *see id.* at 721–22 (collecting cases). *Platt v. Sodexo, S.A.* involved an arbitration provision in an ERISA-governed health-insurance plan that "prohibit[ed] claims brought 'as a plaintiff or class member in any purported class or representative proceeding.'" *Id.* at 715. The plaintiff-employee sued his employer for breach of fiduciary duties in violation of § 409(a), and we considered whether the plan's arbitration provision violated the effective-vindication doctrine by preventing the employee from obtaining the only relief afforded by § 409(a)—relief for the plan. *Id.* at 714–15.

We began our analysis by explaining that the effective-vindication doctrine prevents enforcement of an arbitration provision "if it 'operate[s] as a prospective waiver of a party's *right to pursue* statutory remedies,' including a prohibition on 'the assertion of certain statutory rights.'" *Id.* at 721 (alteration in original) (quoting *Italian Colors*, 570 U.S. at 235–36). We then addressed the same two ERISA sections at play here, confirming that because § 409(a) "provides relief 'singularly to the plan' rather than an individual plaintiff, § 502(a)(2) claims asserting breach of fiduciary duty actionable under § 409(a) are understood as claims 'brought in a representative capacity on behalf of the plan as a whole.'" *Id.* (quoting *Russell*, 473 U.S. at 142 & n.9). And we concluded that because the arbitration provision prohibited claims brought "in any . . . representative proceeding," it was unenforceable because it precluded the plaintiff "from bringing claims in a representative capacity on the Plan's behalf" and "from obtaining the plan-wide relief available under § 409(a)." *Id.* at 715, 721.

## B. Application

With this legal backdrop, we consider whether the Plan's representative-action waiver violates the effective-vindication doctrine.[2]

### 1. Representative-Action Waiver

Pover's complaint makes clear that she seeks to represent the Plan and to pursue the full extent of plan-wide relief available under ERISA. The complaint cites § 502(a)(2), noting that the statute "authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the plan" under § 409(a). And it states that Pover seeks to "act[] in this representative capacity."

The complaint also outlines a spectrum of both monetary recovery and equitable remedies sought that would necessarily affect the entire Plan. For example, Pover seeks a court order requiring that the breaching fiduciaries "make good to the Plan as a whole the losses resulting from each breach of fiduciary duty and to restore to the Plan any profits resulting from each breach." And as equitable remedies, Pover requests restitution, disgorgement, removal of breaching fiduciaries, reformation of the Plan, and "such other equitable or remedial relief as the Court deems appropriate." The requested relief can only be interpreted as seeking recovery that would "inure[] to the benefit of the

---

[2] Capital Group argues, for the first time on appeal, that the parties delegated questions of arbitrability to the arbitrator. Pover contends that Capital Group forfeited this argument by not raising it in the district court. While we have discretion to ignore a party's forfeiture in certain circumstances, *see Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012), we decline to do so here.

[P]lan as a whole." *See Russell*, 473 U.S. at 140; *see also LaRue*, 552 U.S. at 253–54.

To determine whether the representative-action waiver bars Pover's claims, we must answer two questions: (1) whether the waiver prevents Pover from bringing claims on behalf of the Plan and (2) whether ERISA limits a participant in a defined-contribution plan to seeking monetary recovery related only to her individual account.

### i.

The Plan's waiver provision prohibits current and former plan participants, including Pover, from "bring[ing] any dispute . . . on a class, collective or representative basis." Participants may bring disputes "on an individual basis only." Capital Group argues that "representative," as used in this provision, refers only to collective actions, not to actions brought by a plan participant on behalf of the Plan. Capital Group is correct that the Supreme Court has recognized that the word "representative" has two different meanings: one referring to a plaintiff's statutory authority to sue on behalf of an absent principal, and the other referring to a plaintiff's representation of a group of potential claimants. *Viking River Cruises*, 596 U.S. at 648. We have held that § 502(a)(2) claims asserting breach of fiduciary duty are always "representative" in the first sense because the participant-plaintiff "seeks recovery only for injury done to the plan." *Munro*, 896 F.3d at 1092–93 (citing *LaRue*, 552 U.S. at 256). Consistent with the Supreme Court's guidance, *Munro* recognized that even though "the cause of action" under § 502(a)(2) "belong[s] to the individual plaintiff," *id.* at 1093 (alteration in original) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1103 (9th Cir. 2006)), the relief afforded by ERISA benefits the plan, *id.* at 1094; *see also Hawkins v.*

*Cintas Corp.*, 32 F.4th 625, 632 (6th Cir. 2022) (following *Munro*); *Williams v. Shapiro*, 161 F.4th 1313, 1322 (11th Cir. 2025).

Thus, the representative nature of Pover's claim is clear. The remaining question is simply how to interpret "representative," as used in the waiver. On this, our decision in *Platt* controls. The arbitration provision there prohibited "any purported class or representative proceeding." *Platt*, 148 F.4th at 715. We held that language to be a "representative action waiver" that prevented the plaintiff "from bringing claims in a representative capacity on the Plan's behalf." *Id.* at 721. There is no meaningful difference between the prohibition against "any purported class or representative proceeding" in *Platt*, and the prohibition against any claim brought on a "class, collective or representative basis" here. *See id.* at 715. If the former prevents a plaintiff from pursuing those "remedies that were specifically authorized by Congress," in violation of the effective-vindication doctrine, then so does the latter.[3] *See id.* at 721 (quoting *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1107 (10th Cir. 2023)).

### ii.

Relying on *LaRue*, Capital Group argues that a defined-contribution plan participant may nevertheless recover only those monetary losses suffered by her individual account,

---

[3] We agree with our dissenting colleague that *Platt* does not "hold that every arbitration agreement provision with somewhat comparable language necessarily bars ERISA suits on behalf of a plan and is therefore invalid under the effective-vindication doctrine." Dissent at 31. But we disagree that the difference between the words of the waiver provisions at issue in *Platt* and here is sufficient to warrant a different outcome.

plus other appropriate equitable relief, which is all recoverable in individual arbitration under the Plan's arbitration provisions. Capital Group misunderstands both *LaRue* and ERISA.

*LaRue* held that a participant in a defined-contribution plan can bring a claim under § 502(a)(2) even when the alleged fiduciary breach impacted only her individual account. 552 U.S. at 256. But *LaRue* did not, as Capital Group suggests, *limit* plaintiffs participating in defined-contribution plans to recovering losses suffered only by their individual accounts. Nor did *LaRue* "suggest that Section 502(a)(2) allows individualized relief for injuries that *are* felt at *the plan* level." *Cedeno*, 100 F.4th at 399. Just the opposite. *LaRue* explained, consistent with § 409(a)'s plan-oriented protections, that participants in defined-contribution plans can bring a § 502(a)(2) claim to recover for financial harm suffered plan-wide or by individual accounts because both are plan injuries. *See* 552 U.S. at 255–56; *see also Munro*, 896 F.3d at 1093; *Cedeno*, 100 F.4th at 399. What § 502(a)(2) does not allow is for a participant seeking to recover "for individual injuries distinct from plan injuries." *LaRue*, 552 U.S. at 256.

Capital Group's interpretation of *LaRue* "rests on the fiction" that because Pover seeks relief related to a defined-contribution plan, § 502(a)(2) authorizes her to pursue only her individualized *pro rata* share of monetary recovery owed to the Plan while simultaneously obtaining equitable relief that would affect the entire Plan. *See Cedeno*, 100 F.4th at 405. ERISA does not allow "a court or arbitral forum to slice and dice individual plan participants' and beneficiaries' injuries resulting from mismanagement by fiduciaries in the way" that Capital Group suggests. *See id.* Nor do § 409(a) or § 502(a)(2) differentiate between monetary and equitable

relief in a way that can be reconciled with Capital Group's proposed approach. *See id*. As such, we join those of our sister circuits that have rejected the reading of *LaRue* that Capital Group advances. *See, e.g.*, *id*. at 399, 404–06; *Parker v. Tenneco, Inc.*, 114 F.4th 786, 794–96 (6th Cir. 2024); *Williams*, 161 F.4th at 1321–22.

Additionally, while the difference between defined-benefit and defined-contribution plans motivated *LaRue*'s narrowing of *Russell*'s "entire plan" language, this difference mattered because an account-level injury is only possible in defined-contribution plans. *See LaRue*, 552 U.S. at 255. Recall that in *LaRue*, the former employee claimed that the plan fiduciary did not make certain investment changes to *the participant's* account. *Id.* at 251. Because a defined-benefit plan does not allow for individualized investment decisions, neither the breach alleged in *LaRue* nor the consequential injury would have been possible. *See id.* at 254–56. The analytical difference between *Russell* and *LaRue* thus turned on the nature of the injury suffered on account of the plan type, not on the plan type itself. *See LaRue*, 552 U.S. at 254–56; *Cedeno*, 100 F.4th at 399.

Here, Pover alleges fiduciary breaches that harmed the Plan as a whole. For example, she alleges that Capital Group retained a set of five mutual funds among its menu of investment options despite knowing they were underperforming because they generated millions in "fee income" instead of replacing those funds "with any one of the many prudent alternatives." This alleged breach "falls squarely within th[e] category" of duties that § 409(a) imposes on plan fiduciaries. *See LaRue*, 552 U.S. at 253; *see also Varity Corp. v. Howe*, 516 U.S. 489, 511–12 (1996) (noting that § 409(a)'s fiduciary obligations "reflect[] a special congressional concern about plan asset

management" and "relate[] to the plan's financial integrity"). And under § 502(a)(2), Pover is entitled to bring an action on behalf of the Plan to recover any resulting losses, as well as "such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. §§ 1109(a), 1132(a)(2).

For these reasons, we conclude that the Plan's representative-action waiver prevents Pover from enforcing her substantive rights under ERISA because her breach-of-fiduciary-duty claims can only be brought in a representative capacity. Accordingly, the waiver is unenforceable under the effective-vindication doctrine.

### 2.  Severability

Having concluded that the representative-action waiver is unenforceable, our last question is whether this provision may be severed from the Plan's arbitration provision. *See Viking River Cruises*, 596 U.S. at 662. This answer is easy. The waiver provision expressly provides that if it "is found to be unenforceable by a court of competent jurisdiction, then any claim on a class, collective, or representative basis shall be filed and adjudicated in a court of competent jurisdiction, and not in arbitration." Here, where there is no illegality in the severance clause itself, we enforce the Plan as written. *See Mull*, 41 F.4th at 1132. Pover's breach-of-fiduciary duty claims must be adjudicated in court rather than arbitration.

**AFFIRMED.**

VANDYKE, Circuit Judge, dissenting:

The majority errs twice over in finding the arbitration clause unenforceable.  On the merits, I would hold that the

bar on "representative" suits in the arbitration clause's class-action waiver does not refer to third-party suits on behalf of the Plan. When read in context, that phrase refers to class action or collective "representative" suits only, not principal-agent representative suits like section 502(a)(2) ERISA claims. That means it does not prevent Pover from bringing claims on behalf of the Plan in arbitration and therefore does not interfere with Pover's substantive rights to bring section 502(a)(2) ERISA claims.

But we should not have even reached the issue of arbitrability. The parties expressly agreed to allow an arbitrator to decide threshold questions of arbitrability, expressing their desire to keep courts out of this dispute. Although Capital failed to make that argument before the district court, its failure to do so falls squarely within our exceptions to waiver. Consistent with the parties' express intent, I would have waived waiver and sent the question of arbitrability to the arbitrator.

## I.  The majority errs by holding the class-action waiver unenforceable.

The majority explains (1) that in a section 502(a)(2) ERISA claim, the plaintiff proceeds on behalf of the plan and the remedies afforded by ERISA benefit the plan, Majority Op. at 14; (2) that Pover "seeks to represent the Plan" and pursues "plan-wide relief," *id.* at 17; (3) that Pover seeks "monetary recovery and equitable remedies … that would necessarily affect the entire Plan," *id.* at 17; and (4) that Pover can bring a section 502(a)(2) claim to recover for both "financial harm suffered plan-wide" and harm to her "individual account[]," *id.* at 19, as well as "such other equitable or remedial relief as the court may deem

appropriate," *id.* at 22 (quoting 29 U.S.C. § 1109(a)).  I agree with the majority on all four points.

The critical question here, though, is whether the Plan's ban on "class, collective or representative" suits prevents Pover from bringing section 502(a)(2) claims on behalf of the Plan.  If it did, then the majority's bottom-line conclusion would be right: the arbitration agreement would prevent Pover from exercising her statutory right to bring section 502(a)(2) claims on behalf of the Plan in arbitration, and we would need to allow this lawsuit to proceed.

The majority devotes little attention to this crucial question.  In context, the most sensible reading of what the arbitration agreement calls a "class action waiver" is that it bars class or collective "representative" actions, not "representative" suits on behalf of the Plan.  Because there is nothing in the arbitration agreement that prevents Pover from arbitrating her claim on behalf of the Plan, we should have enforced that agreement and directed the district court to compel arbitration.

## A.  The class-action waiver does not foreclose suits on behalf of the Plan.

To understand the interpretive dispute here, it's important to grasp that not all "representative" suits are the same.  The Supreme Court conceives of two different categories of "representative" suits in the arbitration context: (1) collective-action suits where a putative plaintiff "represents" a class of similarly situated individuals, and (2) principal-agent suits where the putative plaintiff "represents" a wholly different entity separate from the plaintiff.  *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 648 (2022).  Rule 23 class actions provide the most obvious example of the first category, where a plaintiff sues

not just on his own behalf but also on behalf of other, similarly situated plaintiffs.

But the second, "principal-agent" category encompasses actions brought by an individual on behalf of a different entity altogether, like a qui tam action, shareholder-derivative suit, or private-attorney-general action. *See id.* at 657. In these types of "representative" suits, the plaintiff stands in the shoes of some third party, effectively bringing claims on that third party's behalf. *See, e.g.*, *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007) (describing qui tam relators as "representing the interests of the government and prosecuting the action on its behalf"). The Supreme Court has observed that, unlike collective action representative suits that "adjudicate the individual claims of multiple absent third parties," "single-agent, single-principal representative suits" are consistent with "the norm of bilateral arbitration as [the Court's] precedents conceive of it." *Viking River*, 596 U.S. at 655, 657. Suits that are "representative" in the principal-agent sense are thus fully compatible with a law requiring that arbitration be "representative." *See id.* at 656–57.

The parties do not dispute, and this court's case law recognizes, that section 502(a)(2) ERISA claims are "representative" in the second, "principal-agent" sense. *See Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1092–93 (9th Cir. 2018). So the important question here is whether the term "representative" in the Plan's class-action waiver bars such suits.

A contextual reading of the Plan's class-action waiver confirms that when it refers to "representative" suits, it means *collective-action* representative suits (like class

actions) rather than *principal-agent* representative suits on behalf of the Plan. A phrase is given more precise content by its association with neighboring words. *See Fischer v. United States*, 603 U.S. 480, 487 (2024). And when a word is placed at the end of a list, it "is typically 'controlled and defined by reference to the specific classes … that precede it.'" *Id.* (internal quotation marks omitted) (quoting *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022)). A classic example of this principle comes from *Yates v. United States*, 574 U.S. 528 (2015) (plurality opinion). There, the Supreme Court considered whether the Sarbanes–Oxley Act's prohibition on tampering with any "tangible object" applied to fish. *Id.* at 532. The dissenting justices concluded that the phrase "tangible object" covered "any object capable of being touched," including a fish. *Id.* at 553 (Kagan, J., dissenting). But the *Yates* plurality and Justice Alito rightly rejected that unnatural reading and looked to the full prohibition against tampering with "any record, document, or tangible object." *See id.* at 544–45; *id.* at 549–50 (Alito, J., concurring in judgment). In context, it was clear that "tangible object" referred "not to any tangible object, but specifically to the subset of tangible objects involving records and documents." *Id.* at 544; *accord id.* at 549–50 (Alito, J., concurring in judgment).

Applying this interpretive approach to the Plan's prohibition on "class, collective, or representative" suits shows that it bars collective-action representative suits only, and not principal-agent suits on behalf of the Plan. Just like the phrase "tangible object" in *Yates*, the class-action waiver's use of "representative" comes at the end of a list—"class, collective or representative." The words surrounding "representative" in the waiver—"class" and "collective"—confirm that the waiver refers to the types of

representative suits brought on behalf of other similarly situated individuals, not to principal-agent "representative" suits where an individual effectively steps into the shoes of the Plan.  Accordingly, we should read "representative suits" to refer not to any representative suits, but only to the subset of representative suits that involve "class" or "collective" suits.

Pover responds that reading the class-action waiver this way violates the canon against surplusage by making the term "representative" "duplicative of the [preceding] terms 'class' and 'collective.'"  But this argument is not persuasive.  For one thing, Pover's reading wouldn't solve all the redundancy problems: if the waiver used "representative" in the principal-agent sense, it still also uses the words "class" and "collective," which mean the same thing and would also be redundant.  It wouldn't make sense to apply the surplusage canon to one word in this list, but not the others.  As the Supreme Court recently explained, "[t]he canon against surplusage can be meaningful when a competing interpretation would avoid superfluity.  But, when both interpretations involve the same redundancy, the canon against surplusage simply does not apply." *Bufkin v. Collins*, 604 U.S. 369, 387 (2025) (citations omitted); *see also Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013) (declining to apply the canon against surplusage when no interpretation would give effect to every word).  "[E]ven excellent writers do not always trim every unnecessary word," *Mullin v. Al Otro Lado*, 609 U.S. ----, ----, 2026 WL 1825741, at *8 (U.S. June 25, 2026), and it appears that the Plan's drafters simply included a three-word list to refer exhaustively to the same type of collective representative action.

To be sure, there's some overlap in the terms "class, collective or representative," but legal documents are often overinclusive and use repetitive phrases to get the same point across. This is "a perhaps regrettable but not uncommon sort of lawyerly iteration." *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012). As Justice Scalia observed, the canon against surplusage "cannot always be dispositive" because "[s]ometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach. Doublets and triplets abound in legalese: *Execute and perform*—what satisfies one but not the other? *Rest, residue, and remainder*—could a judge interpret these as referring to three distinct things? *Peace and quiet*—when is peace not quiet?" Antonin Scalia & Bryan Garner, *Reading Law* 176–77 (2012). "Sometimes," as here, "the better overall reading of [a document] contains some redundancy." *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019); *accord Freeman*, 566 U.S. at 635 (adopting interpretation of statute under which "portion, split, or percentage" in the same clause "all mean the same thing").

Pover's reading would also render an important part of the Plan's arbitration provision meaningless. The arbitration provision specifies that it seeks "to make mandatory individual arbitration apply … to the maximum extent *permissible under ERISA*." Interpreting "representative" as banning section 502(a)(2) claims on behalf of a plan would essentially foreclose arbitration of *any* ERISA claims because—as the majority correctly observes—*all* section 502(a)(2) claims are representative in the principal-agent sense. So if this interpretation were right, the class-action waiver would bar *every* representative action filed on

behalf of a plan.   Such a reading puts the arbitration provision and the class-action waiver in direct conflict—the latter takes away most or all of what the former purports to give.   Since both provisions were added to the Plan at the same time, it's implausible this is what the drafters meant. Reading the Plan's class-action waiver as applying only to collective actions where the plaintiff seeks to represent a class of similarly situated individuals is most consistent with the Plan's express statement that arbitration "shall remain required with the minimum change necessary to allow the arbitration requirement to be permissible under ERISA."[1]

At bottom, the best reading of the Plan's class-action waiver is that it uses the word "representative" in its collective-action sense, not its principal-agent sense.  This means that the waiver does not bar Pover from arbitrating section 502(a)(2) claims on behalf of the Plan.

## B.  The majority misapplies *Platt*.

Eliding any analysis of the Plan's language, the majority simply asserts that, on the crucial interpretive question here: "our decision in *Platt* controls."  Majority Op. at 19.  This is the loadbearing move in the majority opinion.  But it is a misstep.

---

[1] The Summary Plan Description ("SPD") supports this understanding. The SPD provides that plan participants may not "participate in a class action involving the plan" and instead "must arbitrate any claim involving the plan, including … a claim based on allegations of breach of fiduciary responsibility"—in other words, section 502(a)(2) claims. The SPD thus confirms that the arbitration provisions were intended to *allow* arbitration of principal-agent representative claims on behalf of the Plan, while foreclosing only class- or collective-action representative claims.

In *Platt v. Sodexo, S.A.*, a three-judge panel held that the effective-vindication doctrine prevented us from compelling arbitration because the arbitration clause in that case prohibited claims brought "as a plaintiff or class member in any purported class or representative proceeding." 148 F.4th 709, 715, 721 (9th Cir. 2025) (emphasis added). The *Platt* panel described that clause as "a representative action waiver, which expressly preclude[d] Platt from bringing claims in a representative capacity on the Plan's behalf." *Id.* at 721. And, the *Platt* panel held, this waiver was unenforceable because it "prevent[ed]" plan participants from seeking the "plan-wide relief" that section 502(a)(2) entitles them to seek. *Id.*

It's hard to tell exactly why the *Platt* panel was so confident that a clause barring claims "as a plaintiff or class member in any purported class or representative proceeding" prevented individuals from bringing "plan-wide" section 502(a)(2) claims. *Cf. id.* at 715, 721. *Platt* did not acknowledge the different types of representative actions. Nor did it inspect the language of the arbitration clause at issue there to determine whether it barred principal-agent "representative" actions on behalf of a third party—like qui tam and shareholder-derivative suits—or merely barred class-action-style "representative" actions. The *Platt* panel opinion quotes the relevant waiver language only once, in the "background" section, *id.* at 715, and simply concludes—six pages later, without any analysis—that this language *is* "a representative action waiver, which expressly preclude[d] Platt from bringing claims in a representative capacity on the Plan's behalf," *id.* at 721. *Platt* appears to be nothing but a fact-bound decision with essentially no analysis.

It's also not clear why the majority is so confident that *Platt* "controls" here. Majority Op. at 19. The language in the *Platt* agreement—barring claims brought "as a plaintiff or class member in *any* purported class or representative proceeding"—is different from the language in the class-action waiver here. *Id.* at 715 (emphasis added). I don't read *Platt* to hold that every arbitration agreement provision with somewhat comparable language necessarily bars ERISA suits on behalf of a plan and is therefore invalid under the effective-vindication doctrine. And I would not extend *Platt*'s cursory holding about the specific agreement in that case—which, again, involved no analysis of the relevant language or the different types of representative suits—to this case, which involves a different Plan, with different language.

*Platt* is thus no bar to properly construing the actual language before us. And, as I've explained, the best interpretation of *this* Plan's class-action waiver is that it does not ban principal-agent representative suits on behalf of the Plan. Because the waiver does not ban those suits, it does not prevent Pover from vindicating her rights under ERISA, and the severability clause does not take effect. *Cf.* Majority Op. at 22.

## II. We should have applied well-established exceptions to waiver and allowed the arbitrator to decide the threshold issues of arbitrability.

Although the majority errs in extending *Platt*'s holding to misinterpret the class-action waiver, we did not even need to reach that question. That's because the Plan delegates threshold arbitrability questions to the arbitrator. The Federal Arbitration Act ("FAA") tasks courts with a limited role when reviewing a motion to compel arbitration. *See*

*Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010); 9 U.S.C. § 2.   Because arbitration is a matter of contract, "parties are generally free to structure their arbitration agreements as they see fit."  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). The freedom to contract includes the freedom to keep courts out of disputes altogether by dictating that threshold arbitrability questions—such as whether an arbitration agreement applies to a particular dispute and whether the agreement is voided by operation of law—will be decided by an arbitrator and not the courts.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *Rent–A–Ctr.*, 561 U.S. at 68–70; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).  When parties "*clearly and unmistakably*" demonstrate their intention to arbitrate arbitrability, we must enforce that agreement.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

Here, the Plan Committee added an arbitration clause and the class-action waiver to the Plan by formal amendment on January 27, 2020.  The clause applied broadly to "[a]ny claim, controversy or alleged breach or violation of law that arises out of or relates in any way to the Plan," and was binding on both current and former participants.

The clause explicitly incorporated the American Arbitration Association ("AAA") Rules, stating: "[a]ny claim, controversy or alleged breach or violation of the law that arises out of or related in any way to the Plan … shall be settled in binding arbitration administered by the

American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures."  Under Ninth Circuit precedent, this incorporation constitutes "clear and unmistakable" evidence that the Plan delegated threshold arbitrability questions to the arbitrator.  *Brennan*, 796 F.3d at 1130; *Caremark, LLC v. Choctaw Nation*, 104 F.4th 81, 87 n.5 (9th Cir. 2024).  Threshold issues delegated to the arbitrator include defenses like unconscionability and effective vindication.  *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024).  The Plan's "clear and unmistakable" delegation of threshold issues to an arbitrator, deprives us of the authority to decide threshold arbitrability questions and directs these questions to the arbitrator.**[2]**

The majority refuses to resolve the case on these clear legal grounds because Capital failed to argue the issue before the district court.  Majority Op. at 17 n.2.  But the arbitrability of the Plan falls squarely within our recognized waiver exceptions.  We may, and often do, consider arguments not raised below where the issue is purely legal, the record is fully developed, and there is no prejudice.  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006); *Bolker v. Comm'r*, 760 F.3d 1039, 1042 (9th Cir. 1985).

---

[2] The amendment complied with ERISA's procedural requirements.  The Plan expressly authorizes the Committee to amend the Plan.  The amendment was disclosed in both the Summary Plan Description and quarterly materials.  The record establishes that the Plan followed its own amendment procedures and satisfied ERISA's disclosure obligations.  The Supreme Court has explained that employers may freely amend ERISA plans if they follow the procedures outlined in the plan's documents. *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).  Pover does not dispute that the Committee had authority to adopt the amendment.

Whether incorporation of AAA Rules in the Plan governs delegation is a purely legal question. *Brennan*, 796 F.3d at 1130. The record is also complete since nobody disputes that the language of the valid amendment to the Plan explicitly incorporates the AAA Rules. And factual disputes about *Pover*'s sophistication or receipt of amendments to the Plan are irrelevant to whether the *Plan* agreed to arbitration (which it clearly did). Pover is suing here on behalf of the Plan—she cannot rely on her individual level of sophistication in asking us to ignore the Plan's delegation of arbitrability questions to an arbitrator. The Plan is not prejudiced by arbitrating according to the Plan's own terms, which the Plan itself approved. I see no reason to avoid enforcing the arbitration clause's delegation of arbitrability questions to an arbitrator.

\* \* \*

We should not have even decided the issue of arbitrability, but the majority nonetheless reaches that issue to find that the class-action waiver bans more than class actions. In doing so, the majority transplants the ipse-dixit holding from *Platt* to hold in this case, again without analysis, that the Plan language here bars Pover from bringing claims on behalf of the Plan. That isn't the best reading of the Plan's class-action waiver. I respectfully dissent.